IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AARON LEVINE and
GAIL LEVINE,

       Plaintiffs,

vs.                                         Civ. No. 03-00546 MV/LFG

INVENSYS BUILDING SYSTEMS, INC.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, filed December 29, 2003, **[Doc. No. 27]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.

### FACTUAL BACKGROUND

In the summer of 2002, Plaintiffs Aaron and Gail Levine resided in Corrales, New Mexico, where Aaron Levine performed contract work for Software Innovations, Inc., and Gail Levine was the Director of Professional Relations, Nephrology division, and a management team member at Watson Pharmaceutical, Inc. ("Watson"). At the time, Gail was the primary wage-earner in the family and Aaron was the primary care-giver for their infant daughter. The Levines, however, wanted Aaron to become the primary wage-earner so that Gail could stay at home and care for their daughter. Consequently, Aaron began looking for new employment that would permit him to assume the role of primary wage-earner.

In August 2002, Aaron Levine contacted Defendant Invensys Building Systems, Inc.,

("Invensys"), to explore the possibility of going to work for Invensys in Rockford, Illinois. Aaron Levine met with representatives of Invensys on October 4, 2002, in Rockford, Illinois, to discuss his possible employment. During his discussions with Invensys, Aaron Levine informed them that Gail Levine was employed and would have to resign her job in order for him to accept a position with Invensys.

On October 11, 2002, Invensys e-mailed an offer of employment to Aaron Levine. The offer letter stated:

> We are pleased to offer you the position of Principal Engineer/Team Lead reporting to Ray Feller at Invensys Building Systems. The base salary for this offer is $3875 paid semi-monthly, which would equal $93,000 on an annual basis.
>
> As a salaried employee, you will be eligible to participate in our comprehensive benefits package beginning on the first day of the month following the month that you begin employment. You will also be eligible to participate in our 401K program. Enclosed is an overview of our benefits for your review.
>
> We are also pleased to offer you relocation to the Rockford area. Attached is a copy of the relocation policy. You will also be contacted [sic] the Invensys relocation people and they will send you information and answer your questions regarding our policy.
>
> Your employment is contingent upon the satisfactory results of a post offer/pre-employment drug screen as well as a satisfactory background/reference check. Also this offer is conditional on your not having entered into a signed agreement with a previous employer that contains a non-competition clause that might affect your ability to accept employment with Invensys Building Systems. If you have entered into such an agreement, please forward a copy of the agreement to me prior to any further action on this offer. This offer is also contingent upon your signing a confidentiality agreement that has been previously mentioned to you. I will get that to you as soon as I have it.
>
> I believe the position offered provides a unique opportunity and challenge for you. We look forward to you joining our team. This letter is being furnished to you in duplicate. Please sign and return one copy to me as your acceptance of our employment offer and indicate on this letter your intended start date.

Should you have any questions, please feel free to contact me.

On that same day, both Aaron and Gail Levine resigned their current positions. Aaron Levine orally accepted the offer a few days later and signed the offer letter on October 16, 2002.

At some point after October 11, 2002, Invensys determined that due to budgetary constraints, it would have to implement a reduction in force. In response to this information, Invensys rescinded all open job offers. On October 17, 2002, Invensys notified Aaron Levine that it was rescinding his job offer.

Aaron Levine resumed his position as independent contractor for Software Innovations, Inc. Gail Levine, however, did not seek reinstatement of her position with Watson, where she was still working, because she believed that her career with Watson had been irreparably damaged as a result of her resignation. Gail Levine subsequently was unable to secure a comparable position.

Aaron and Gail Levine filed this action in the District Court, Thirteenth Judicial District, State of New Mexico, asserting breach of contract (Count I), breach of the duty of good faith and fair dealing (Count II) and misrepresentation (Count III). Plaintiffs seek compensatory damages for the loss of Gail Levine's employment as well as punitive damages, prejudgment interest, and fees and costs. Invensys removed the case to this Court pursuant to 28 U.S.C. § 1441.

## LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable

to the nonmoving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Pittsburg & Midway Coal Min. Co. v. Yazzie,* 909 F.2d 1387, 1427 (10th Cir. 1990), the burden on the moving party may be discharged by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case, *Celotex,* 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 322.

## DISCUSSION

**I. Choice of Law**

Federal courts sitting in diversity must apply the substantive law, including choice of law rules, of the state in which they sit. *Robert A. Wachsler v. Florafax Intern. Inc.*, 778 F.2d 547, 549 (10th Cir.1985) (citing *Klaxon Co. v. Slentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). Accordingly, the Court looks to New Mexico choice of law rules to determine which state's law to apply to Plaintiffs' contract and tort claims.

**a. Contract Claims.** Under New Mexico choice of law principles, a breach of contract claim is considered under the law of the state where the contract was enacted. *See Shope v. State Farm Ins. Co.*, 925 P.2d 515, 517 (N.M.1996). A contract is enacted "at the time when the last act necessary for its formation is done, and at the place where the final act is done." *Merriman v. Harter*, 280 P.2d 1045, 1047 (N.M. 1955).

Here, it is not immediately apparent whether, and if so, where, the contract was enacted because the offer letter sent to Aaron Levine contained several conditions precedent, including passing a drug test and a background check, and signing a confidentiality agreement. Some conditions precedent are considered prerequisites to the formation of a contract while others are considered prerequisites to an obligation to perform under a contract. The nature of a condition precedent is controlled by the intent of the parties. *Western Commerce Bank v. Gillespie*, 775 P.2d 737, 739 (1989). In this case, Invensys requested that Aaron Levine sign the offer letter "as acceptance of our employment offer." This demonstrates that the parties intended that the conditions listed in the offer letter be conditions precedent to the obligation to perform under the agreement and not conditions precedent to the formation of the contract. Consequently, the

contract was formed when Aaron Levine signed the offer letter in New Mexico and New Mexico law applies to Plaintiffs' contract claims.

    **b. Tort Claims.**  In tort actions, New Mexico choice of law principles dictate that the substantive law of the state where the injury occurred apply.  *See, e.g., Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc.*, 45 F.Supp.2d 1255, 1261-62 (D.N.M. 1999).  The alleged injuries occurred to Plaintiffs in New Mexico and therefore the Court must apply New Mexico law to Plaintiffs' tort claims.

### II. Breach of Contract

Invensys asserts that Plaintiffs' breach of contract claim must fail because Aaron Levine's employment was at will and could have been terminated at any time by either party.  Therefore, Invensys reasons, if it could have terminated Aaron Levine's employment at any time, its decision to rescind its offer of employment cannot be a breach of the employment agreement.  Plaintiffs appear to concede that if Aaron Levine's employment was at will, Invensys cannot incur liability for breach of contract by rescinding its offer of employment.  Plaintiffs assert, however, that the at-will presumption is overcome by evidence "of an intent for an extended employment of Aaron Levine, and consideration established by the Levines' changes in position due to the contract of employment."[1]

In New Mexico, an employment agreement for an indefinite period is presumed to be

---

[1] Under New Mexico law, implied employment contracts do not require a factual showing of additional consideration.  *See Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 780 (N.M. 1993).  If there is proof of a promise sufficient to support an implied contract, the consideration sufficient to support the implied contract will be implied as a matter of law.  *Id.* at 781.  While additional consideration is not a necessary element of an implied contract in New Mexico, Plaintiffs' evidence of additional consideration may show the intent of the parties to enter into a contract of employment and will be considered as such.

employment at will, absent an express agreement otherwise.  *See Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1233 (N.M. 1989); *Kestenbaum v. Pennzoil Co.*, 766 P.2d 280, 284- 86 (N.M. 1988); *Garrity v. Overland Sheepskin Co. of Taos*, 1996 NMSC 032, ¶ 10, 917 P.2d 1382; *Hartbarger,* 857 P.2d at 779 (1993).  An at-will employment relationship may be terminated at any time, with or without cause, by either the employee or the employer.  *See Melnick v. State Farm Mut. Auto. Ins. Co.*, 749 P.2d 1105, 1109 (N.M. 1988).

An exception to the general at-will employment rule occurs where the existence of an implied contract limits an employer's authority to discharge.  Whether such an implied contract exists is generally a fact question, *Hartbarger*, 857 P.2d at 780, which must be determined by examining the totality of circumstances surrounding the employment relationship.  *Lopez v. Kline*, 1998-NMCA-016, ¶ 12,  953 P.2d 304, 306 (1997).  An implied contract may be found in written or oral representations, in the conduct of the parties, or in a combination of representations and conduct.  *Newberry*, 773 P.2d at 1234-35.  To support the existence of an implied contract, however, the representations and/or conduct must be explicit and definite. *Garrity,* 1996-NMSC-032 at ¶ 12; *Hartbarger*, 857 P.2d at 783 (to create an implied contract, the offer or promise must be "sufficiently explicit to give rise to reasonable expectations").  Where a plaintiff presents evidence of a promise sufficient to support an implied contract, consideration for the implied contract will be implied as a matter of law by the court.  *See Lopez*, 1998-NMCA-016 at ¶ 12; *Hartbarger*, 857 P.2d at 781.

Plaintiffs point to four facts they believe demonstrate an implied contract for Aaron Levine to be employed by Invensys for a definite period:

1)      Invensys knew that in order for Aaron Levine to accept the offered position, the

Levine family would have to relocate and Aaron and Gail Levine would have to relinquish their current employment;

>   2)   The offer letter provided an annual salary;

>   3)   Invensys offered to pay relocation expenses;

>   4)   The offer letter stated that "I believe the position offered provides a unique opportunity and challenge for you. We look forward to you joining our team."

First, although New Mexico courts have not ruled on the issue, other courts have rejected the idea that reliance on a job offer, such as relinquishing a current position or relocating, is sufficient to alter the presumption that employment is at will. *See, e.g., Goff-Hamel v. Obstetricians & Gynecologists, P.C.*, 588 N.W.2d 798 (Neb. 1999) (fact that employee terminated her current employment in reliance on an offer of employment from defendant, which was subsequently withdrawn, was insufficient to alter at-will status of proposed employment relationship); *Sartin v. Mazur*, 375 S.E.2d 741 (Va. 1989) (fact that employee had resigned from other employment and incurred relocation expenses in reliance on job offer did not alter at-will nature of employment).

There is no basis to find that the nature of the employment relationship should vary depending upon whether an employee had to relinquish a current position or relocate in order to accept a new position. It is obviously very common that prospective employees have to resign from other employment and/or relocate to accept a job offer.[2] These frequent occurrences, which

---

[2] Prospective employees who have to relocate and give up secure positions to accept a new job may negotiate for employment for a definite period of time. Such bargained-for expectations can be enforced by the Court. There is no evidence in this case, however, that Aaron Levine had any specific discussions with Invensys regarding the length of his employment much less negotiated for employment for a definite period of time.

are incidental to the acceptance of a job offer, cannot convert an at-will relationship into a guarantee of employment for a definite period. This is particularly true where, as here, the prospective employee affirmatively sought employment in a new location. Consequently, the fact that Plaintiffs were willing to give up their current positions and relocate so that Aaron Levine could accept the job with Invensys is insufficient to overcome the presumption of at-will employment.

Second, Plaintiffs assert that the fact that the offer letter indicated that the salary for the position was "$3875 paid semi-monthly, which would equal $93,000 on an annual basis" supports the existence of an implied contract for employment for a definite period. Although a few courts have taken a contrary position, the majority of jurisdictions have held that the contractual expression of an employee's compensation in terms of a time unit does not in itself raise a presumption of a hiring for that period of time or any other definite period. *See* David B. Harrison, Annotation, *Modern Status as to Duration of Employment Where Contract Specifies No Term But Fixes Daily or Longer Compensation*, 93 A.L.R. 3d 659 (collecting cases from nineteen states that support the view that specification of a time unit does not raise presumption of definite term of employment); *but see Demunbrun v. Gray*, 986 S.W.2d 627, (Tex.App.-El Paso 1998) (absent special circumstances, a hiring at a stated sum per week, month, or year is a definite employment for the period named and may not be arbitrarily concluded). The majority position recognizes, however, that specification of an employee's pay in a particular time unit constitutes some evidence of an intention to hire the employee for that time unit and that such a designation, when considered together with other circumstances, may provide part of the justification for an inference of an employment for the respective time unit. *Id.*

The Court anticipates that New Mexico courts will follow the majority approach, which is consistent with New Mexico law holding that the existence of an implied contract must be determined by examining the totality of circumstances surrounding the employment relationship. *See, e.g.*, *Lopez*, 1998-NMCA-016 at ¶ 12. As a result, the fact that the offer letter sent to Aaron Levine specified a salary in bi-monthly units, with an annual equivalent, does not in itself indicate an agreement for an employment for a definite period of two weeks, or possibly even a year, but may be considered together with other relevant circumstances implying that the employment was for such a period.

Third, the fact that Invensys was willing to pay relocation costs may suggest that Invensys was optimistic that the parties would have a long-term relationship and was willing to commit substantial resources to hiring Aaron Levine but it does not imply a promise to employ Aaron Levine for a particular period. *See, e.g., Justice v. Stanley Aviation Corp.*, 530 P.2d 984 (Colo. Ct. App. 1974) (employer's agreement to pay employee's relocation expenses provided no basis for an inference that the term of the employment was for a definite period).

Fourth, Invensys's closing statement in the offer letter to Aaron Levine does not demonstrate an offer of employment for a definite period. Courts have found that similar "optimistic expressions about the future and statements which are informal in character and express only long continuing good will and hope for eternal association are insufficient to establish an oral contract for permanent employment." *Kercher v. Forms Corp. of America, Inc.*, 630 N.E.2d 978, 981 (Ill. App. Ct. 1994) (internal quotes omitted). Such statements of expectation are not guarantees of employment for any specific term. *See, e.g., Buian v. J.L. Jacobs & Co.*, 428 F.2d 531, 533 (7th Cir. 1970) (statement regarding anticipated length of

employment was a statement of "expectation and not sufficient to insert any ambiguity into an otherwise customary employment relationship terminable at will"). The language in the offer letter is no more "than assurances of goodwill or the hope for continued association," *Farr v. Continental White Cap, Inc.*, 774 F.Supp. 522, 524 (N.D.Ill. 1991), and does not support the assertion that Invensys offered Aaron Levine a position for a definite period of time.

      The totality of circumstances surrounding the employment relationship does not support a finding that Invensys made an offer or promise sufficiently explicit, specific, or definite to establish an implied contract of employment for a specific term. *See, e.g., Garrity*, at ¶ 12 ("An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon."). As an initial matter, the offer letter to Aaron Levine does not mention any definite term of employment and does not indicate that Aaron Levine could be terminated only for just cause. In addition, Aaron Levine concedes that no one at Invensys ever promised him employment for a definite term or told him his employment was anything other than employment at will. Plaintiffs provide no evidence that Aaron Levine discussed with Invensys the proposed term of his employment, much less bargained for a certain length of employment. *See Shull v. New Mexico Potash Corp.*, 802 P.2d 641, 643 (N.M. 1990) (finding that employee who did not bargain for any term of employment had no legitimate expectations of being employed for a specific period of time and was an at-will employee). Notably, Plaintiffs are unable to identify the definite period of employment guaranteed by the purported implied contract but only vaguely assert that the employment offer was for an "extended period of time" or "long term." The Court finds that there is no reasonable interpretation of the evidence cited by Plaintiffs, considered under

the totality of the circumstances, that would lead Plaintiffs to believe that Aaron Levine was being offered anything other than employment for an indefinite duration--*i.e.*, at-will employment--terminable at any time.

The majority of courts have held that when a proposed employment is at will, an employer is not liable to a prospective employee for breach of contract if the job offer is withdrawn before the employment began. *See, e.g., Bower v. AT&T Technologies, Inc*., 852 F.2d 361, 363 (8th Cir. 1988) (applying Missouri law) (employer could not be held liable on a breach of contract theory for a promise of future at-will employment because such liability would not exist if the at-will employee were discharged without reason one hour, one day, or one week after commencing his employment); *Goff-Hamel,* 588 N.W.2d 798 (at-will employee does not, as a matter of law, have a cause of action for breach of employment contract); *Sartin*, 375 S.E.2d 741 (offer for at-will employment is terminable at any time, including the time before the prospective employee assumes the position); *Payne v. FMC Corp*., 1991 WL 352415, *4 (D.S.C. 1991) ("because defendant's offer of employment to plaintiff was for an indefinite period of time, defendant had the right to withdraw that offer before plaintiff actually began working without incurring liability for breach of contract").  The Court anticipates that New Mexico will follow the majority of courts.  Accordingly, Invensys is not liable to Plaintiffs on a breach of contract theory for withdrawing its offer of at-will employment.

### III. Breach of the Covenant of Good Faith and Fair Dealing

New Mexico does not recognize a cause of action for breach of covenant of good faith and fair dealing in the context of employment at-will. *Melnick*, 106 N.M. at 730 (New Mexico, like other jurisdictions, refuses "to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in at-will employment contracts."). Plaintiffs' claim for breach of the covenant of good faith and fair dealing fails as a matter of law because the employment relationship was at-will.

### IV. Misrepresentation

Plaintiffs' final claim is for negligent misrepresentation.[3] Under New Mexico law, Plaintiffs must establish the following four elements to maintain a negligent misrepresentation claim:

1. Invensys made a false representation of fact or a representation of fact that, while literally true, was misleading;

2. Invensys did not exercise ordinary care in obtaining or communicating the information conveyed;

3. Invensys should reasonably have foreseen that Plaintiffs would be harmed if the information conveyed was not correct or was misleading; and

4. Plaintiffs justifiably relied on the information.

*See, e.g.,* New Mexico Uniform Jury Instruction 13-1632.

Plaintiffs assert that the offer letter was misleading because it was inconsistent with the "reduction in force" directives issued by the company and because it did not state that the job

---

[3] Plaintiffs' Complaint asserts a claim for intentional and/or negligent misrepresentation. In their response brief, however, Plaintiffs state that they are only pursuing a claim for negligent misrepresentation.

13

offer was subject to any "reduction in force" directives issued by the company. It is undisputed that the employment offer was made to Aaron Levine prior to any decision being made regarding a reduction in force at Invensys. Therefore, the offer letter was not issued in contravention of any "reduction in force" directives issued by Invensys. Furthermore, there is no evidence in the record that a reduction in force was even being contemplated at the time the offer was made to Aaron Levine. It is not misleading for an employer to omit references to unknown and unanticipated events that may affect a job offer.

Plaintiffs have failed to present evidence from which a reasonable jury could conclude that Invensys made a false representation of fact or a representation of fact that was misleading and Plaintiffs' negligent misrepresentation claim fails as a matter of law.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, filed December 29, 2003, **[Doc. No. 27]** is hereby **GRANTED.**

Dated this 14th day of June, 2004.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiffs:
    Michael Allision, Esq.

Attorneys for Defendant:
    Lisa Mann, Esq.
    Alex C. Walker, Esq.